| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE LAKE CIRCUIT/SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF LAKE | ) | CAUSE NO. 45C01-1709-CT-00147 |
| BREANNA SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TPUSA, INC. d/b/a Teleperformance USA, a | ) | |
| Delaware corporation, and TPUSA – FHCS, | ) | |
| INC., a Delaware corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW the plaintiff, BREANNA SMITH, and complains of the defendants, TPUSA, INC. d/b/a Teleperformance USA, a Delaware corporation, and TPUSA – FHCS, INC., a Delaware corporation. Pleading hypothetically and in the alternative, the plaintiff alleges as follows:

### I. NATURE OF THE ACTION

1. This action seeks to redress the deprivation of, and interference with, the plaintiff's rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, as amended by the Pregnancy Discrimination Act of 1978, and under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.* This action seeks declaratory, equitable and injunctive relief, compensatory and punitive damages, attorneys' fees and costs.

2. The plaintiff also brings state law claims for promissory estoppel and retaliatory discharge.

3. Finally, the plaintiff brings claims for unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U. S. C. 201 *et seq.*, Indiana Minimum Wage Law of 1965 ("IMWL"), I.C. §22-2-5-1 *et seq.*, and the Indiana Wage Payment Act ("IWPA"), I.C. §22-2-2-1 *et seq.*

## II. THE PARTIES

4. The plaintiff is a United States citizen and resident of Lake County, Indiana.

5. TPSUSA, INC. is a Delaware corporation that has its principal place of business at or near 6510 Millrock Drive, Suite 150, Holladay, UT 84121.

6. TPSUSA – FHCS, INC. is a Delaware corporation that has its principal place of business at or near 9999 Technology Boulevard W., Dallas, IN 75220.

7. The defendants are affiliated entities that own and operate a telemarketing business with offices and other facilities throughout the United States.

8. At all times relevant to this action, the following defendant/s operated a telemarketing facility at or near 1901 Northwind Parkway, Hobart, IN 46342 (the "Hobart Facility"): a) TPUSA, INC.; b) TPUSA – FHCS, INC.; or c) both TPUSA, INC. and TPUSA – FHCS, INC.

9. The plaintiff was employed by one or more of the defendant/s (hereinafter, "Teleperformance"), at the Hobart Facility, from about October 1, 2015 until she was terminated on or about January 17, 2017.

10. Prior to her termination on or about January 17, 2017, the plaintiff was employed by Teleperformance as a customer service representative.

11. At all times relevant to this action, Teleperformance conducted business in Lake County, Indiana.

2

12. At all times relevant to this action, Teleperformance employed in excess of 500 individuals.

### III. JURISDICTION AND VENUE

13. This Court has jurisdiction over the plaintiff's common law claims under Indiana law. This Court has concurrent jurisdiction over the Plaintiff's Title VII and FMLA claims.

14. The unlawful employment practices described herein were committed within Lake County, Indiana. Accordingly, venue in this Court is proper.

### IV. ALLEGATIONS GIVING RISE TO CAUSES OF ACTION

15. On or about October 30, 2016, or prior thereto, the plaintiff made a request to Teleperformance for maternity leave.

16. Teleperformance granted the plaintiff's request for maternity leave, from October 31, 2016 through December 11, 2016.

17. On October 31, 2016, the plaintiff went out on maternity leave.

18. In early December, 2016, because the plaintiff had been experiencing medical complications with her pregnancy, she made a request to Teleperformance for an extension of her maternity leave through January 2, 2017.

19. Teleperformance granted the plaintiff's request for the extension of her maternity leave through January 2, 2017.

20. On January 3, 2017, the plaintiff returned to work.

21. However, when the plaintiff returned to work on January 3, 2017, her security credentials had been deactivated and, as a result: a) she could not log into Teleperformance's computer system; b) she could not clock in or out of Teleperformance's

3

time clock system; and c) she needed a supervisor or manager to allow her access to the building at the Hobart Facility.

22. When the plaintiff returned to work on January 3, 2017, Teleperformance assigned her to do work that did not require her to use her security credentials to log into the Teleperformance computer system.

23. For example, when the plaintiff returned to work on January 3, 2017, Teleperformance assigned her to audit other employee's telemarketing calls – a job Teleperformance called "side-jacking" because the equipment Teleperformance provided to use in this function was called a "side-jack" (literally, headphones and a jack that allowed the user to sit alongside another employee, plug the jack into that employee's phone, and listen in).

24. Thereafter, Teleperformance continued to assign the plaintiff to perform side-jacking on a normal work schedule through about January 17, 2017.

25. However, at no time did Teleperformance reactivate the plaintiff's security credentials, which meant that she was unable to log into Teleperformances computer system, and she was unable to clock in to Teleperformances time clock system.

26. In spite of the above, Teleperformance allowed the plaintiff to work a normal schedule for almost three weeks: Teleperformance provided the plaintiff with a side-jack to use throughout the period between January 3, 2017 and about January 17, 2017; and the plaintiff did in fact use the side-jack to perform the work to which she was assigned during the stated period.

27. On numerous occasions between January 3, 2017 when the plaintiff returned to work from her maternity leave, and January 17, 2017, on almost a daily basis, the

4

plaintiff informed her supervisors and/or managers, Tatiana, Christina and others, that her security credentials had not been reactivated. They replied that they were looking into or and/or working on it.

28. However, on or about January 17, 2017, Teleperformance terminated the plaintiff's employment.

29. When Teleperformance terminated the plaintiff's employment on or about January 17, 2017, they claimed that they did so because the plaintiff was a "no call no show" for three days; but this claim is false.

30. As alleged above, Teleperformance had assigned the plaintiff to perform side-jacking from January 3, 2017, through about January 17, 2017; and the plaintiff had in fact performed work during that period according to her assigned schedule.

31. Teleperformance's claim that the plaintiff was a "no call no show" for three days is merely a pretext designed to hide the real reason that Teleperformance terminated the plaintiff's employment.

32. Teleperformance claims is "has no record" of the plaintiff working between January 4, 2017 and January 17, 2017; but, if in fact this is true, it is only because Teleperformance deliberately failed and refused to reactivate the plaintiff's security credentials which would, in turn, allow her to log into the Teleperformance computer system and log in to the Teleperformance time clock system as described above.

33. Even though the plaintiff performed work for Teleperformance in accordance with her regularly assigned work schedule between January 4, 2017 and January 17, 2017, Teleperformance paid the plaintiff nothing for the labor she performed during that period;

and Teleperformance has through the present day failed and refused to pay the plaintiff for her labor during that period.

34. At all times relevant to this action, the plaintiff performed her job duties satisfactorily or better and, in the alternative:

   a. Teleperformance had never formally disciplined or reprimanded the plaintiff;

   b. Teleperformance had never formally disciplined or reprimanded the plaintiff for any infraction that would warrant the termination of the plaintiff's employment under Teleperformance's stated policies and procedures; and

   c. Teleperformance had never formally disciplined or reprimanded the plaintiff for any infraction that would warrant the termination of the plaintiff's employment under Teleperformance's de facto policies and procedures.

COUNT I
(Violation of Title VII)

35. The plaintiff re-alleges the foregoing paragraphs.

36. On March 17, 2017, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on the bases of discrimination and retaliation in violation of Title VII.

37. On June 27, 2017, the EEOC issued a "Notice of Right to Sue" letter to the plaintiff, a copy of which is attached as Exhibit A.

38. Teleperformance terminated the plaintiff's employment because:

6

    a. she had taken maternity leave as described above; and/or

    b. she had been pregnant during the time she took maternity leave, and prior thereto.

39. Teleperformance's actions and omissions violated Title VII in that, among other things:

    a. they subjected the plaintiff to unequal terms and conditions of employment as a result of her gender;

    b. they subjected the plaintiff to unequal terms and conditions of employment because she had been pregnant; and

    c. they constitute unlawful retaliation in violation of Title VII.

40. The defendant's actions and omissions were willful and wanton in that they were undertaken in reckless disregard for the plaintiff's rights under Title VII.

41. As a direct and proximate result of the defendant's retaliation in violation of Title VII, the plaintiff was damaged in that she lost her job, lost wages and benefits, and suffered other pecuniary losses.

42. As a direct and proximate result of the defendant's retaliation in violation of Title VII, the plaintiff was damaged in that he was caused to suffer humiliation and severe emotional distress.

43. The plaintiff is entitled to relief under Title VII including back pay, reinstatement or front pay in lieu of reinstatement, compensatory damages for emotional distress among other things, consequential damages, punitive damages, the value of lost fringe benefits, pre- and post-judgment interest, a gross-up amount for any increased taxes

that the plaintiff is required to pay based on the timing and amount of monies recovered in this action, attorneys' fees and cost.

### COUNT II
### (Violation of the FMLA)

44. The plaintiff re-alleges the foregoing paragraphs.

45. On or about October 30, 2015, or prior thereto, the plaintiff requested a leave of absence that was covered by the FMLA: she requested maternity leave as described above.

46. At all times relevant to this action, the plaintiff was an "eligible employee" under the FMLA in that, among other things, she worked in excess of 1250 hours for Teleperformance during the twelve-month period preceding her request for FMLA leave.

47. At all times relevant to this action, Teleperformance was/is a "covered employer" under the FMLA in that, among other things, SEH employed/employs far in excess of 50 individuals at the Hobart Facility.

48. The plaintiff was entitled to take leave pursuant to the FMLA.

49. Teleperformance's actions and omissions violated the FMLA in that, among other things:

   a. they constitute unlawful and improper interference with the plaintiff's entitlement to leave under the FMLA; and

   b. they constitute unlawful retaliation in violation of the FMLA.

50. Teleperformance's actions and omissions were willful and wanton in that they were undertaken in reckless disregard for the plaintiff's rights under the FMLA.

51. As a direct and proximate result of Teleperformance's violation of the plaintiff's rights under the FMLA, the plaintiff was damaged in that she lost her job, lost wages and benefits, and suffered other pecuniary losses.

52. As a direct and proximate result of Teleperformance's violation of the plaintiff's rights under the FMLA, the plaintiff was damaged in that she was caused to suffer humiliation and severe emotional distress.

53. The plaintiff is entitled to relief under the FMLA including back pay, reinstatement or front pay in lieu of reinstatement, compensatory damages, the value of lost fringe benefits, liquidated damages, pre-judgment and post-judgment interest, a gross-up amount for any increased taxes that the plaintiff is required to pay based on the timing and amount of monies recovered in this action, attorneys' fees and costs.

## COUNT III
### (Promissory Estoppel)

54. The plaintiff re-alleges the foregoing paragraphs.

55. Teleperformance approved the plaintiff's request for a leave of absence, and approved the plaintiff's request for an extension of that leave of absence.

56. The plaintiff complied with all of the terms appurtenant to Teleperformance's approval of the leave of absence and of the extension.

57. The plaintiff reasonably relied on Teleperformance's statements that her requests for leave, and for an extension of that leave, had been approved; and the plaintiff relied upon them to her detriment in that, among other things, she did not attempt to find another job until after Teleperformance had terminated her employment on or about January 17, 2017.

58. The plaintiff's reliance upon Teleperformance's statements was reasonable.

59. Teleperformance knew or should have known that the plaintiff would rely the statements.

60. Teleperformance was and is estopped from terminating the plaintiff's employment.

61. The plaintiff is entitled to make-whole relief under the common law including back pay, reinstatement or front pay in lieu of reinstatement, compensatory damages for emotional distress among other things, consequential damages, the value of lost fringe benefits, pre- and post-judgment interest, a gross-up amount for any increased taxes that the plaintiff is required to pay based on the timing and amount of monies recovered in this action, attorneys' fees and costs.

## COUNT IV
### (Retaliatory Discharge)

62. The plaintiff re-alleges the foregoing paragraphs.

63. Public policy mandates, or should mandate, that employers:

    a. must not retaliate against employees who request maternity leave; and

    b. must not retaliate against employees who take approved maternity leave.

64. Teleperformance retaliated against the plaintiff for having requested and taken maternity leave.

65. As a direct and proximate result of the Teleperformance's tortious actions and omissions, the plaintiff was damaged in that she lost her job, lost wages and benefits, and suffered other pecuniary losses.

66. As a direct and proximate result of Teleperformance's tortious actions and omissions, the plaintiff was damaged in that he was caused to suffer humiliation and severe emotional distress.

67. The plaintiff is entitled to relief under the common law including back pay, reinstatement or front pay in lieu of reinstatement, compensatory damages for emotional distress among other things, consequential damages, punitive damages, the value of lost fringe benefits, pre- and post-judgment interest, a gross-up amount for any increased taxes that the plaintiff is required to pay based on the timing and amount of monies recovered in this action, attorneys' fees and costs.

### COUNT V
### (Violation of the FLSA)

68. The plaintiff re-alleges the foregoing paragraphs.

69. Teleperformance allowed the plaintiff to perform work during the period between January 4, 2017 and about January 17, 2017 (the "Relevant Period"), for which work Teleperformance has completely failed and refused to pay the plaintiff.

70. The plaintiff worked about 50 hours in Relevant Period for which she was paid nothing at all.

71. Teleperformance violated the FLSA in that, among other things, it failed and refused to pay the plaintiff at a rate not less than the federal minimum wage for the hours the plaintiff worked during the Relevant Period in that Teleperformance paid the plaintiff nothing for those hours.

72. The Defendants' violation of the FLSA was willful in that the Defendants were aware or should have been aware of their obligations under the FLSA, but nevertheless attempted to circumvent its provisions.

73. The Defendants failed to take affirmative steps to ascertain their obligations under the FLSA.

74. As a direct and proximate result of Teleperformance's acts and/or omissions in violation of the FLSA, the plaintiff was damaged in that she suffered pecuniary loss.

75. The plaintiff is entitled to relief under the FLSA including unpaid minimum wages, liquidated damages, attorneys' fees and costs.

## COUNT VI
### (Violation of the IMWL)

76. The plaintiff re-alleges the foregoing paragraphs.

77. Teleperformance violated the IMWL in that, among other things, it failed and refused to pay the plaintiff at a rate not less than the Indiana minimum wage for the hours the plaintiff worked during the Relevant Period in that Teleperformance paid the plaintiff nothing for those hours.

78. The Defendants' violation of the IMWL was willful in that the Defendants were aware or should have been aware of their obligations under the IMWL, but nevertheless attempted to circumvent its provisions.

79. The Defendants failed to take affirmative steps to ascertain their obligations under the IMWL.

80. As a direct and proximate result of Teleperformance's acts and/or omissions in violation of the IMWL, the plaintiff was damaged in that she suffered pecuniary loss.

81. The plaintiff is entitled to relief under the IMWL including unpaid minimum wages, liquidated damages, attorneys' fees and costs.

### COUNT VII
### (Violation of the IWPA)

82. The plaintiff re-alleges the foregoing paragraphs.

83. Teleperformance violated the IWPA in that, among other things, it failed and refused to pay the plaintiff or the hours she worked during the Relevant Period.

84. The Defendants' violation of the IWPA was willful in that the Defendants were aware or should have been aware of their obligations under the IWPA, but nevertheless attempted to circumvent its provisions.

85. The Defendants failed to take affirmative steps to ascertain their obligations under the IWPA.

86. As a direct and proximate result of Teleperformance's acts and/or omissions in violation of the IWPA, the plaintiff was damaged in that she suffered pecuniary loss.

87. The plaintiff is entitled to relief under the IWPA including unpaid minimum wages, liquidated damages, attorneys' fees and costs.

## V. PLAINTIFF'S REQUEST FOR RELIEF

WHEREFORE the plaintiff prays for judgment in her favor and against Teleperformance, and for the following relief:

A. A declaration that Teleperformance's actions described herein constitute violations of Title VII and/or the FMLA;

B. A permanent injunction that retrains Teleperformance from engaging in the type of actions, described above, that violate Title VII and/or the FMLA in the future;

C. Reinstatement to the position in which she was employed prior to her termination, including any promotions and advancements she would have enjoyed but for her termination;

D. Back pay, the monetary value of lost fringe benefits, front pay in lieu of reinstatement and a make-whole award to compensate for any additional taxes (or other charges) for which she may be liable as the result of the timing of the payment of any monies recovered in this action;

E. Liquidated damages in an amount equal to the sum of the plaintiff's actual damages pursuant to the FMLA;

F. Unpaid minimum wages and liquidated damages under the FLSA;

G. Unpaid minimum wages and statutory punitive damages under the IMWL;
H. Unpaid regular wages and statutory punitive damages under the IWPA;

I. Compensatory, consequential and punitive damages;

J. Attorneys' fees and costs; and

K. Such further and additional relief, including equitable relief, as the Court may deem just and proper.

Respectfully submitted,

ALEX MENDOZA LAW, LLC
Attorneys for Plaintiff

_____
Alex Mendoza 30766-49
6950 Indianapolis Blvd.
Hammond, IN 46324
(219) 200-2000 p
(866) 676-4550 f
info@alexmendozalaw.com

## PLAINTIFF'S REQUEST FOR TRIAL BY JURY

The plaintiff requests a trial by jury of all issues set forth herein that are capable of being tried by a jury.

                Respectfully submitted,

                ALEX MENDOZA LAW, LLC
                Attorneys for Plaintiff

                */s/ Alex Mendoza*
                Alex Mendoza 30766-49
                6950 Indianapolis Blvd.
                Hammond, IN 46324
                (219) 200-2000 p
                (866) 676-4550 f
                info@alexmendozalaw.com

# EXHIBIT A

EEOC Form 161 (11/16)     U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Breanna Smith
REDACTED

From: Indianapolis District Office
101 West Ohio St
Suite 1900
Indianapolis, IN 46204

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 470-2017-01537 | Michelle D. Ware, Enforcement Supervisor | (317) 226-5161 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

- NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_[signature]_     JUN 27 2017

Michelle Eisele,
District Director     (Date Mailed)

Enclosures(s)

cc: Nichole Duggins
Paralegal
TELEPERFORMANCE
5295 South Commerce Drive
Suite 600
Murray, Utah 84107

Paul Luka
ALEX MENDOZA LAW PC
120 S. State Street, Suite 400
Chicago, IL 60603

Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** -- not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request **within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA): The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

- The limitations from the impairment no longer have to be severe or significant for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), "major life activities" now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- Only one major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, the beneficial effects of "mitigating measures" (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) are not considered in determining if the impairment substantially limits a major life activity.
- An impairment that is "episodic" (e.g., epilepsy, depression, multiple sclerosis) or "in remission" (e.g., cancer) is a disability if it would be substantially limiting when active.
- An impairment may be substantially limiting even though it lasts or is expected to last fewer than six months.

"Regarded as" coverage:
- An individual can meet the definition of disability if an employment action was taken because of an actual or perceived impairment (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively BOTH transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.